DIXON v. CITY OF NEW YORK.

(Supreme Court, Trial Term, Kings County. April, 1900.)

1. PHYSICIANS AND SURGEONS—NIGHT SERVICE—CITY'S LIABILITY—APPROPRIATION.

Brooklyn City Charter, tit. 12, §§ 10, 11, declare that a physician duly registered for night medical service, and rendering the same at the request of the police department, shall be entitled to the payment of a fee of $3 therefor from the city, on the patient's failure to pay the same; and title 12, § 11, and title 2, § 18, require it to make an appropriation for such service, not exceeding $3,000 for any one year. *Held* that, when the city's yearly appropriation of $1,500 for night medical service became exhausted before plaintiff's services were rendered, the city was not liable therefor.

2. SAME—FAILURE TO APPROPRIATE.

Greater New York Charter, § 325 et seq., declares that a physician duly registered for night medical service, and rendering the same at the request of the police department, shall be entitled to the payment of a fee of $3 on the patient's failure to pay the same. Section 230, subd. 13, requires a city to appropriate a sum not exceeding $3,000 for such purposes. *Held*, that the latter section was mandatory, and hence, where the city failed to make any appropriation therefor, it was liable for such services, not exceeding $3,000.

3. SAME.

New York Charter, §§ 1541, 1542, providing that no expenses shall be incurred by any department or officers without an appropriation previously made, and that no charge shall exist against the city in excess of the amount appropriated for the several purposes, does not apply to services rendered for the city, where the charter contains a mandatory provision that the municipal assembly shall make an appropriation for the payment of such services, though in fact no appropriation is made.

Action by Thomas Dixon against the city of New York to recover for night medical services. Judgment for plaintiff.

W. L. Carey, for plaintiff.
Alex. McKinney, for defendant.

GAYNOR, J.   The charter of the new city of New York (section 325 et seq.) provides for what is called the night medical service. Any physician may apply to the police captain of the police precinct in which he has his office to be registered as a physician to be called upon by the police to do such medical service; and upon the registrar of vital statistics certifying that he is in good and regular standing in his profession he shall be so registered.   On the application of any person residing within such precinct for medical attendance between 10 o'clock at night and 7 o'clock the next morning, the police officer in charge at the precinct station house has to detail an officer to call upon a physician so registered and conduct him to the residence of the patient.   After the medical service is performed, the accompanying officer has to give a certificate to that effect to the physician, stating the name and address of the patient, and that the physician is entitled to $3 for such service. Such physician must then request payment thereof of the patient; and in default of such payment the captain of the precinct has to indorse such certificate; "and thus indorsed it shall be the duty of the cashier of the department of health to pay at sight the fee aforesaid."

In the charter of the former city of Brooklyn the same system was provided for (sections 10, 11, tit. 12); and the services which the plaintiff sues for were rendered in part in 1897 under the said charter of the city of Brooklyn, and in part in 1898 under the charter of the new city of New York.

It is conceded that the plaintiff was duly registered, and that he rendered the services, and that they were duly certified; but it is pleaded as a defense that when the said services were rendered there was no money appropriated to pay for such night medical service. And it is admitted as facts that the board of estimate and the common council of the city of Brooklyn appropriated $1,500 for such service for the year 1897, but that such appropriation had been exhausted before the services of the plaintiff in that year were rendered; and that the board of estimate and apportionment and the municipal assembly of the city of New York made no appropriation for such service for the year 1898.

The charter of the city of Brooklyn was mandatory that the board of estimate and the common council should make an appropriation for such night medical service, and that it should go into the tax levy, but left the amount to their discretion, but not to exceed $3,000 for any year.   Section 11, tit. 12; section 18, tit. 2.   The charter of the present city of New York is also mandatory that the board of estimate and apportionment and the municipal assembly shall make an appropriation for such purpose each year, and put it in the tax levy; the sum not to exceed $3,000 "unless otherwise provided by said board and the municipal assembly."   Section 230, subd. 13.   The expense incurred for such service in the year 1898 does not amount to as much as $3,000.

The general scheme of the charter of the city of Brooklyn was that no money could be expended, or liability incurred, except out of an appropriation previously made therefor.   It follows that when

the appropriation for the night medical service for 1897 was exhausted, no further liability against the city therefor could be created in that year. The general scheme of the charter of the city of New York is the same; but appropriations thereunder (as under the former charters of the city of Brooklyn and the old city of New York) come under two heads, viz., those which the board of estimate and apportionment and the municipal assembly are commanded by the charter to make and put into the tax levy, and those which are left to their discretion to make or not. The appropriation for the night medical service comes under the first head as has been seen. The said board and municipal assembly cannot by failing to make appropriations which the law commands them to make for specified public purposes prevent such purposes from being carried out. The same section which commands that an appropriation be made to pay for the services of the physicians who constitute the night medical service also commands (for instance) that appropriations be made to pay for certain services of justices of the supreme court of the state, and the expenses of registering voters, and of elections. The said board and council cannot by failing to make such appropriations prevent such expenses from being incurred in the one case any more than in the others. They cannot prevent the mayor and corporation counsel from collecting their salaries by failing to appropriate the sum necessary therefor and put it in the tax levy. They are empowered to fix a limit which the expense of the night medical service shall not exceed. This they may do in good faith; but they may not refuse to make any appropriation for it. The plaintiff had a right to presume that they had obeyed the mandate of the statute.

The charter provides that "no expenses shall be incurred by any of the departments, boards or officers thereof, unless an appropriation shall have been previously made covering such expense, nor any expense in excess of the sum appropriated in accordance with law"; and that "no charge, claim or liability shall exist or arise against said city for any sum in excess of the amount appropriated for the several purposes." Sections 1541, 1542. But this must be read in relation to the said general scheme dividing appropriations into those which are discretionary and those which are mandatory, and it can have application to the former only.

Judgment for the plaintiff for the services rendered in 1898.